Oh, I thought you were on the last case because you were sitting. You usually wait until it's your case to come up and sit at council table, but for next time. I was confused. I thought you were on the last case with that lawyer. This is also my first Fifth Circuit, so I apologize for a Fifth Circuit argument. All right, whenever you're ready. May it please the Court, Your Honor, Brad Laney here for the Township of Downe. This lawsuit was not a lawsuit between private corporations. I can't emphasize that enough. This lawsuit was not a lawsuit between private corporations. Downe is a municipal entity. It was created by the state of New Jersey. It covers 52 square miles. It's got 1,200 taxpaying citizens. And that money that the taxpaying citizens pay is carefully guarded by laws. And those laws are the New Jersey Public Contracts Law and also the Downe's Purchasing Ordinance. And those laws say, look, a contract of the size of the one at issue in this case, any contract over 500 in regards to the ordinance, over 17,500 in regards to local public contracts law. If there's going to be a contract that size, the only way it can be approved is through a formal and public resolution from Downe's Township Committee. Any other agreement for a contract absent that resolution is dead. That's what the law says. The Crest v. La Villa case, which we quoted at length in our brief, it goes through an indistinguishable fact pattern. New Jersey mayor entered into a contract, didn't get the committee resolution approval. The guys in that case, they kept going to committee meetings. The committee members said, oh, we'll pay you, we'll pay you, don't worry about it. But when it came down to a court of law, there was no resolution. So they said that contract was dead, void, and null. It was as if no contract had ever been entered at all. And I would like to take this a step further to the Fifth Circuit's ruling in Northup Grunman Ship Systems. And we cited it in our brief. If you would like a cite to it, it's 575F3D491. And it goes through Mississippi local contracts law, which is the exact same as New Jersey public contracts law. This was enacted to protect the taxpayers. This was enacted to say specific procedures to enter into contracts. And when those contracts aren't followed, then the contract's dead. And when looking at the Mississippi public contracts law, this is what this government, this is what this court held. In other words, a government entity, talking about the state of Mississippi, has the power to define how and when it enters into a contract, and by extension how and when its agents have authority to create contracts on its behalf. And these words could have been drafted for this case, Your Honor. And I see where the New Jersey statute does seem quite clear. So why didn't you argue that early on in the lawsuit? I mean, it seems like you were trying to recover your own under the contract. And so I wonder if it was almost an estoppel. If you're telling the court, we have claims under the contract as well, and then later on it turns out, well, the contract's no good. Well, the township is a very poor township. They wanted their attorney's fees. And Section 5.5A was written into the contract to take the teeth out of the contract. That was specifically put in there to incorporate the meaning of New Jersey public contracts law. Because if you remember what it says, it says, this contract can't be used as a debt. It also says, this contract can't require us to appropriate funds. And the reason they put that in there is they're removing the teeth from the contract. That's the only reason the mayor felt okay signing it. So when this lawsuit was filed, this lawsuit has caused great struggle amongst the township and its budget having to go through these many years of litigation, and they wanted to go after their attorney's fees. So we started off going after their attorney's fees, and we also did that at the beginning of the stage, the Rule 12b6 stage, and we filed a summary judgment motion two weeks after the case was filed. But after we couldn't get rulings on those, Your Honor, we immediately switched and went to the other ones. We said, look, the purchasing ordinance, local public contracts law, we urged those at the summary judgment phase. We urged them at a directed verdict in the middle of the trial after they presented their evidence, and we brought them up again at the conclusion of the trial in another motion for directed verdict. And then they asked for a proposed findings of fact inclusion of law, the judge did, and we put it back in that. So we raised it over four or five times in the underlying court. So let's say you're right that the contract claims no good. What about unjust enrichment, which is usually the recourse when someone provides services and there turns out not to be a contract? Well, first of all, the unjust enrichment claim has been waived because they never brought it to the district court's attention. They just rode that breach of contract claim all the way through, and we've cited many, many cases on this, Your Honor. So it was never addressed in the findings of fact and conclusions of law, but it does seem like the court said this trial is only about damages under the contract claim, which the district court says there's liability under the contract, that was pretrial rulings, and then seemed to emphasize that this trial is limited to the issue of what the contractual damages are. Well, no, Your Honor. It actually, at the beginning of the trial, respectfully, no, Your Honor. At the beginning of the trial, he said because we're doing a bench trial, we're going to open this up to all the issues we've talked about. We went through all the local public contract law issues. We went through all the down-purchasing ordering issues. We got testimony on it. We got rulings on it pretrial. We got rulings on it at the end of the trial. And then, of course, in his final findings of fact and conclusion of law, he said based on all the testimony I heard at the trial, I don't feel I'm going to change my summary judgment order. So he actually reconsidered, I guess, would be the best way to put it. And then one thing I want to say, Your Honor, of course, all due respect, is on this appeal. That means you're about to criticize the district court pretty sharply, I think. You really don't need to dress it up like that. Just tell us what the problem is. I'm sorry. Yes, Your Honor. On this appeal, the issue you were talking about, about whether we brought up these arguments sufficiently, that was never raised in EHRA's responsive brief. I guess it's them you're going to slam. So they never said anything about we didn't bring it up sufficiently enough, we didn't bring it up specifically enough, we didn't bring it up early enough. So I don't think it's proper to make a ruling on that basis when they've never brought the argument up. And Fifth Circuit law, I believe, is pretty clear that if you don't bring up something in your principal brief, then it's been waived and can't be ruled on. So what's the proper approach to the unjust enrichment? Just deal with that on remand, or are you saying that it's gone forever? It's gone forever because the cases say, Your Honor, and if you can give me just one second to pull them up. The cases for the unjust enrichment, Your Honor, say that you have a duty to ask for affirmative relief of your claims. But is that true? I mean, they're inconsistent claims. They're either-or claims. And so the judge has said, You're liable under the contract, Township. The other side wins their contract claim on liability. You're going to damages. I mean, it would just-there would be no role for unjust enrichment in that scenario because unjust enrichment is recovery on a non-when there's not a contract. So I'm not sure your case is-do you have any case addressing-and I think it's a difficult question. I don't quite see what happened to the-it just sort of withered away, this unjust enrichment claim. Well, Your Honor, the case said that if you want to pursue a claim, then you have to bring it up, ask for relief under it. No, sure. As a general principle, that's the case. What I'm saying is do you have any cases where it's you win on a claim that is inconsistent with the other claim? I mean, you agree they could not have won both claims. Now, perhaps they could have had an alternative. The district court could have made an alternative holding. In the event I'm wrong about a contract, I would award this under unjust enrichment. But you could not win-the other side could not win both claims. They're inconsistent with one another. Your Honor, I would say-I would take a little-and the briefs that talk about a claim being waived, all the cases are on page 56 of our reply, and we list several cases that say, you know, we're ready to pursue a complaint, claim to get off the complaint, abandon our view of the record. Okay, but just to be clear, you're not saying that they formally said in court, we're abandoning our unjust enrichment claim and we're proceeding exclusively on contract. You're not saying that. You're saying that they only proceeded on one and sort of just didn't talk about the other one. Correct. Why is it the reasonable interpretation of that simply, as Judge Costa alluded to, they're proceeding on contract because they went on contract, in which case the other claim is not necessary. Why is that? That's not waiver. At most it's forfeiture, but I'm not even sure why it's forfeiture. I believe it is waiver, Your Honor. Our practice is usually when we have several different claims of alternative relief, we go all the way through and we get a ruling on every single one of them. At that point, you have to elect a remedy and, you know, which we're going to take damages for this cause, but you still have on the record a ruling on all those claims. And unjust enrichment, a breach of contract. So what's your best case for the notion that by failing to continue to press the alternative backup claim, that they're out of luck, that they have to do everything at one time? Can I cite multiple cases for you? Sure. Or would you rather me give you a page of our brief that has them all? If it's in your brief, yeah. You can just cite the page. You don't need to hand it up. Okay. Page 56 on our reply brief and 57 cites four cases that talk about if you have multiple claims and you're allowed to proceed forward with one, then you've abandoned the right for a remand or to argue and appeal the claims that were abandoned. The typical case is there are alternative claims. Let's say you have a business dispute. You bring a fraud claim, a fiduciary duty claim, a tortious interference claim. I mean, people are throwing all kinds of stuff out there. Those are alternative. They're not inconsistent with one another. They're just alternatives. And so I think you're right. People usually pursue those. Yeah, even though I won my fraud claim, I'm going to back that up with a tortious interference claim. And you can't get a double recovery, so you have to elect one remedy. But here it's not just that they're alternative. They're inconsistent. You cannot have both. Go ahead. Well, I agree in some sense, Your Honor, but I do think that whether they were inconsistent or not, they should have kept them in the case to see where it lands. And to just ignore it completely, then all the way from the beginning. They didn't amend their complaint to get rid of it, right? All you're saying is they proceeded to trial or to final judgment on the contract claim. Right. And did not ask for relief. They never asked for any relief. Rather than putting in the complaint. Unjust enrichment. And then there's another couple wrinkles in the unjust enrichment, Your Honor. The one is the unjust enrichment claim should fail for the same reason as the contract, and that's because New Jersey public contracts law and Downs local ordinance and the Fifth Circuit case I cited and all that, you shouldn't be able to circumvent these laws put in place for taxpayers by just filing an unjust enrichment claim. They should fall for the same reason. The whole purpose of those statutes, and they're not limited to just contracts, they're limited to sort of agreements, any promised expenditure, any invoice they receive. So this whole idea that you can't just say, well, our contract didn't work out, but now we're going to go under an unjust enrichment theory and get there the same way. That would completely eviscerate New Jersey public contracts law. That would completely get rid of Downs purchasing ordinance. It would get rid of all these courts holdings honoring other states' contracts laws. And that type of end round, it should die with the rest of the contract. And then, of course, the second wrinkle in the unjust enrichment claim is it was too late by the statute of limitations. We never fully briefed that because the unjust enrichment claim was never brought. But this is for work done back in, don't make me forget the year, but they were eight months too late in bringing their unjust enrichment claim. So they did a little work after that. So the unjust enrichment claim would be like $30,000 or something. I think you did bring that up at one point during the trial in seeking a directed verdict, which is why I'm a little bit confused whether the unjust enrichment was part of the trial or wasn't. I don't think it's very clear. Well, yes, sir. I was trying to knock out everything, but they never— Didn't you bring that statute of limitations issue up? Yes, Your Honor, and I did it in my proposed findings of fact conclusions of law. But the other side, the EHRA never asked for any affirmative relief. I believe I'm over time. No, you've got a minute 20 left. But if you want to give it back, we'll take it. No, sir. And then I do want to talk about Section 5.5a briefly. I think anyone that can read and write the English language can read that and see what it says. It says this contract can't be used to create a debt. It says the down is not required to appropriate its own funds. The only reason the mayor signed that contract was because it took the teeth out of the contract. And the district court—I have great, great respect for Judge Hoyt, but he got that completely wrong. He said that the appropriation of funds was funds by FEMA, which doesn't even make sense. The clause says funds by downtownship committee, and also FEMA doesn't appropriate funds. Down has to pay its own funds, and then they can later apply for reimbursement from FEMA. So if the court—there's two ways to kill the contract, and that's through the New Jersey public contracts laws. There's the down city ordinance, and then, of course, there's Section 5.5a. And then the final thing I want to say, Your Honor, is just if you don't believe anything I'm saying up here and the contract stays intact, if the contract stays intact, then the award of attorney's fees was improper because Texas Civil Practice and Remedy Code 38.001 only allows—and I'm out of town. All right. Now you're out of time, but I've got more good news on time. You do have your time for rebuttal. That initial clock does not include your rebuttal time. So you'll have a chance to get back up here. We'll now hear from Ed Minster's counsel. May it please the Court, Your Honors. for EHRA. It's not my first Fifth Circuit argument, maybe my hundredth and first, and I have a wonderful collection of pins to prove it. I got a red one today to add to my collection of blue and silver, so much appreciated that. The first point I want to say is EHRA has no problem with New Jersey's contract statute, has no problem with downtownship's ordinance. It's just that they don't apply, and the reason they don't apply is stated three times in the PSA, and that is because three times in the PSA, the parties specifically elected Texas law to apply. But I don't understand that because if the contract was never formed, that choice of law provision is invalid, and it seems to me the New Jersey statute is getting at what is required for a municipal entity, township, to agree to a contract. And so to me, I don't see why a choice of law provision matters if we're getting to a question of whether the defendant had the ability to agree to a contract. Your Honor, it is a great chicken-egg issue. It really is. And we suggest in this case the choice of law provision is what controls. The New Jersey contract statute and the downtownship ordinance are for the protection of New Jersey governmental entities. But choice of law provisions, the very purpose of those, said this court in Cardone in 2015, is for parties to give up the law of a particular state and elect the law of their chosen state in agreement with the other party. What if you had a choice of law provision with a 5-year-old? I'm stipulating that in the jurisdiction of the 5-year-old, they do not have the capacity to enter a contract. Correct. What would we do in that case? Your Honor, maybe, well, in that case, there's no capacity to enter into the contract. We don't trigger the choice of law. We just go to capacity. Well, but, Your Honor, respectfully, they do have the capacity. That's a governmental entity represented by a city council. That's not the whole dispute of the case. I beg your pardon? I thought that was the whole thing we're talking about is whether they have capacity. I thought the New Jersey statute, if you read it the way they read it, says unless the council approves the contract, there is no contract. We don't have the capacity, ability to enter into a contract. That is certainly what it says, Your Honor. But they gave up that procedure and that process by electing Texas law. That's this court's jurisprudence. Like my 5-year-old. Well, except, Your Honor, in this case, you have a city council and a mayor, which is certainly different from a 5-year-old. The 5-year-old, well, the 5-year-old can't agree. As a matter of law, obviously, factually, yes. But as a matter of law, what's the difference? Either way, it's a question of capacity under that particular jurisdiction. And, Your Honor, I'm sorry. I think I keep interrupting you. The 5-year-old that doesn't have capacity for sure doesn't have capacity for a different reason, and that is the tender age of a 5-year-old. In this case, they say they don't have capacity, but they do have capacity. They have the capacity because they are adults. They have the capacity because they are men and women of age. They have the capacity because they represent downtownship, the mayor and the city council. They have the capacity to say, in order for us to get this contract, which we want because we want EHRA services, they have the capacity and the opportunity to say we'll go with EHRA's choice of law, we'll go with Texas law. Let me ask you another concern I have about your choice of law argument, putting aside the fact that it assumes the existence of a valid enforceable contract. It just seems to me it would be odd or just doesn't fit to say Texas law determines whether a New Jersey entity, creation of a New Jersey government, has the ability to enter into contracts. Texas doesn't deal with the types of municipal entities New Jersey has. And it's analogous to the corporate law context. I think generally in corporate law, corporate law issues about piercing the veil, alter ego, are typically, I think, governed by the jurisdiction that incorporated the entity. Agreed. So how can you fit Texas law onto the ability of a New Jersey, creation of a New Jersey government to enter into contracts? Well, Your Honor, and the answer to that is in the contract. It's in the PSA under the authority provision where it says we are representing, both sides are representing, that we have the authority to enter into this contract and to bind ourselves to it. And the mayor signed that on behalf of downtownship, and the city councilman, or rather the committee members, to be more technically correct. No, I'm saying how does Texas law fit a New Jersey township? If that isn't even a creation of Texas government. It is. Well, certainly it's not. And I think, Your Honor, I think the answer is in the contract. There's no attempt to take, for instance, the New Jersey township of down and say, well, all these Texas laws governing Texas municipalities are now going to apply to you. I totally agree. That would be, that just can't be done. For one thing, it puts New Jersey in the untenable position of having to say, well, we subject ourselves to all these Texas municipality statutes that were never written for us. So the question becomes, then where do they look for their protections and their rights and their duties? And the answer is right back to the PSA. All of those are in the contract. You would agree if they were just holding themselves out to be a township, but in fact New Jersey never created this entity, because all these municipalities are a creation of state government, then you wouldn't be able to sue them. You could name them in a lawsuit, but you wouldn't have the ability to sue an entity that didn't exist under New Jersey law, right? Well, I think that's fair to say. If they weren't an incorporation under New Jersey law, we would be suing a bunch of individuals. This mayor was just making up that there was a township that created them. Correct. I agree. We wouldn't be able to sue them because they literally couldn't exist. So your ability to sue them stems from New Jersey creating them, the entity? Well, our ability to sue them stems from the fact that they are incorporated under that particular state's law, yes. That's absolutely true. But as that municipality, they have the ability to give up the protection of New Jersey law, including the protection that would normally inure to them if they entered into a contract, and that's what they did in this case, three times. That's also why the mayor and the city council members testified. That's right. That's right. Aren't we just going right back to the same capacity question? Well, Your Honor, well, yes. Even within a contract or the capacity to alter their own rules, you still have to have capacity, don't you? Well, that's true, and I guess that is the chicken and the egg. In this case, we're saying the egg came first. The egg is the contract. The contract says we have these rights, we have these protections, we choose to give them up. Then everything that comes out of that egg from then on is controlled by that contract because Texas law applies. But how can we be comfortable that they have the right to give up, as you say, those rights? Your Honor, I think that gets back to the fact that all the testimony in the record is from the mayor and the committee members said that the mayor had the authority to do it, and even the contract says that in the authority to bind section. That section, the mayor specifically says, I have the authority to bind the New Jersey Township of downtown. How can the mayor's deposition testimony change what New Jersey law is? It can't change what New Jersey law is, Your Honor. There's no question about that. But what it can do is bolster what he already said in the contract, which is I have the authority to do this. In other words, I have the authority to give up the rights and the protections that we would normally have under New Jersey law and instead elect Texas law because that's how badly I want EHRA to work for the Township of down. The mayor said that's what he did. The committee members said that's what he did. The committee members said that's what we told him to do. What if it had been a private citizen's council? I just purport to say, look, we're very close to the elected officials. They always get our support. Trust me, we're able to bind. Your Honor, in that case, I don't think we get there. So what's the difference? Well, the difference is these people are elected officials in the Township of down. These are people who were elected by the people. The citizens of down said this is our mayor, this is our city council, they represent us. And what this contract does is say, yes, they do. They do. And as such, the mayor can bind the Township of down and so can the city council. But I read New Jersey law to say it's the city council that has the legislative authority. Not unlike a lot of Texas cities, the mayor is really more of an administrative post without legislative type authority. That's true, Your Honor. But again, the city councilmen, their testimony is in the record. And they said we gave the mayor the authority to do that. They absolutely came out and said it. It's quoted in our brief. He did what we wanted him to do. He did what we told us to do. There's even testimony that there was a FEMA appointment, and I believe it was Mayor Campbell that said this. In fact, he said it at a council meeting to the public. There was a FEMA appointment that the committee had and they gave it to the mayor. And the quote from the record is to get the projects done. And that's why they entered into this contract, and that's why they gave up their right to rely on New Jersey law. Because they wanted EHRA to work for them. And one collateral point on that. There are 32 cases cited in Down's briefing that stand for the proposition that you've got to obey a municipality's rules when that municipality contracts. Those cases come from New Jersey. They come from this court. They come from the United States Supreme Court. A total of 32. In those cases, not a single one involved a governmental entity contracting with a private entity from another state. And you see where it's going. In those 32 cases, not a single one involved a governmental entity contracting with a private entity from another state. And agreeing that that state's law would control. Not one out of 32. We respectfully suggest if there had been such a case, it would have come out differently. The court would have said... It's an issue of first impression. Exactly. That's true. That's fair to say. And what we ask, Your Honor, is you look at Cardone. Which this court wrote in 2015. Cardone is great on choice of law. And one thing it says is, you want the antidote to choice of law? I'll tell you what it is. It's section 187.2 of the Restatement of Conflicts of Laws. And there is no effort in this case to win or to even cite the restatement and say, for these reasons, this choice of law doesn't pertain to us, even though we might. What case law says a choice of law provision dictates what law you apply when deciding whether the contract was formed in the first place? Your Honor, I think if you asked Mr. Laney, he'd probably have the same answer as me. I'm not aware of that case. I'm absolutely not. I agree with Judge Ho. I think this is a case of first impression on that. If it's out there, I haven't found it. Or you would have already read about it. So, to that degree... Why didn't the district court deal with this? Or did it? Am I missing something? Your Honor, the district court did deal with it on the record several times and wound up saying, New Jersey law... Is there analysis of any of these issues that we're talking about? Not in any great detail, Judge Ho. At one point, and I'm going to reference this because Judge Costa used the key word, estoppel. At one point, Judge Hoyt said on the record, look, you can't contract with these people. Take their services for six months. They put $400,000 in your pocket. And then when the time comes to pay the bill, you say, King's X, guess what? We didn't pass a resolution. Sorry, you don't get paid. That sounds like unjust enrichment. I beg your pardon? That sounds like unjust enrichment. Well, it does. Right now, we're talking about a contract claim. True, but it also pertains to the contract under the theory of estoppel. You never asserted estoppel, though. Well, Your Honor, the judge did, of course. And no, did we plead estoppel? No, we didn't plead it. But, of course, this Court's duty is to see is there some theory on which the judgment can be affirmed that was raised at trial. And Judge Hoyt brought that up. Of course, we agreed with him, not being completely off the track here. We agreed with him. But his point really does go to the contract, too. At that point, aren't you estopped to deny the existence of a contract? And the answer is yes. Now, how that pertains to unjust enrichment, obviously, I hope we never get there. But Judge Hoyt said on the record twice, at pages 2139 and 2141, in an early order that he signed in the case, there is a valid contract. I'm specifically finding the PSA is valid and enforceable, and so go forward. Well, at that point, EHRA determined, well, of course we're not going to pursue our unjust enrichment claim. Coughlin, the case that this Court issued on this issue in 2001, says unjust enrichment is a quasi-contract theory. And so the first rule of unjust enrichment is you can't have a contract. Well, here's Judge Hoyt saying on the record twice, you do have a contract. At that point, EHRA makes the reasoned, reasonable decision, well, we just won. He just said there's a contract. If we pursue an unjust enrichment claim, I mean, that borders on frivolous and sanctionable because it can't be both. When I was on the district court, it was fairly common for people to seek alternative findings on different claims, knowing they could only recover one. You could only get a single recovery for your injury. And people would bring three, four, five claims and seek rulings. Because then if you're in a situation where one of those claims goes bad on appeal, it's more efficient because you don't have to send it back for a retrial on the other claim. Right. And, Your Honor, I don't disagree for a minute. I think that would be completely reasonable. All I'm saying is EHRA not doing that does not sink to the level of waiver or forfeiture. Now, there's a great case. You could have done it, but you didn't have to. I beg your pardon, Your Honor. You could have done it, but you didn't have to. That's exactly right. We could have, but we were not required to. My concern is I just don't see any. It would be one thing if the final judgment says award X in favor of Edminster on the contract claim. Because of this contractual recovery, you know, the unjust enrichment claim became unnecessary. I mean, it just seems like it was never or if you told the court that. I didn't see where you affirmatively told the court, well, we're not going to pursue this now. We're not because it would be redundant or inefficient. But it just seems like it was forgotten about. Well, Your Honor, there is a point in the record where Mr. Laney is arguing an unjust enrichment point, and I believe it was limitations. Mr. Copeland, Mr. Bruce Copeland as opposed to Mr. Brad Copeland, argues, Your Honor, you found a contract. So this doesn't really make any difference. Now, was it much more than that? No, it wasn't. But he was just reminding the court, you've already determined there's a contract. If you've determined there's a contract, unjust enrichment is irrelevant. And the judge went from there. You're trading one judicial efficiency for another. Correct. You didn't have to waste time doing this below, but you might have to now do it again. I wish I'd said that. Exactly. It is trading one judicial economy for another, but it's still judicially economical. And so it goes on with the contract, and unjust enrichment is just not developed. If you did, hypothetically speaking, if you lost your contract claim here and went back for an unjust enrichment claim, would there have to be new evidence or is the evidence from the trial what you need and it's just fitting that to the elements of unjust enrichment? Your Honor, I think there would need to be new evidence because, I mean, the court has seen the record. It's very, very heavy on contract. And the PSA, everything in this case has been about the PSA since the judge ruled that there is a valid and subsisting contract. So my candid answer is I think you need another trial. But the trial was about we did this much work, we spent this many hours. I mean, what would the additional evidence you would need to prove unjust enrichment? Well, for instance, I think there would need to be more detail on how Down benefited from EHRA's work. That's the first thing that occurs to me. There is a great case called Wohl, and it's cited in our brief, W-A-L-L, from the Third Circuit in 2018. Again, I hope it winds up being irrelevant. But what the court said was when the plaintiff goes all the way through to judgment on a breach of contract claim and recovers damages, and then the Third Circuit and that court determined, well, guess what, there was no contract claim, there was no contract. So what's left, and they specifically remanded the case for evidence and trial on the unjust enrichment claim that had not been developed. We think if the court gets there, that is a good blueprint for this case, Wohl from the Third Circuit. It's an unusual fact situation, largely because, as Judge Costa observed frequently, these claims go to the court all at once. In this case, Judge Hoyt elected to go a different way. We obviously don't have a quarrel with that. But we think that's the right disposition if the court determines that the PSA is invalid and unenforceable. My only other point is that the mayor and the city council knew what they were doing. They did it intentionally. They entered into this contract. One of the lawyers for the township of Down approved the contract, read it and reviewed it before the mayor signed it. They knew what they were doing. No one was duped. To get EHRA, they intentionally gave up the protection of New Jersey laws and elected to go with Texas. We respectfully suggest Judge Hoyt was right when he determined to hold them to that choice. And for that reason, except for the points we presented in our own appellant's brief, we ask the court to affirm Judge Hoyt's decision. May it please the court. EHRA's primary argument is that the Texas Forum Selection Clause should govern. First and foremost, that argument has been waived. At the district court, they argued New Jersey local public contracts law should govern. They cited standards in that provision, one that related to an extreme emergency when a mayor has power to enter into a contract. They cited that as the governing law. We get to trial. During the middle of the trial, the attorney for EHRA conclusively says, oh, and your honor, there's a Texas Forum Selection Clause. He doesn't say, we want an analysis to determine which one should apply. He doesn't say what Texas laws should apply, what Texas laws are different than New Jersey's law, and how the Forum Selection Clause would change anything in the case. That's it. That's why you don't see anything in the record about a Forum Selection Clause. And this court has held, when you don't argue, when you don't specifically ask for a Forum Selection Clause determination and explain how the laws will be different, then that has been waived. And these cases, your honor, are on pages 17 and 18 of our brief. In addition to him being waived, the judge hit it right on the head. The Forum Selection Clause, the authority to bind clause, the mayor didn't have authority to enter into that. He didn't have authority to enter into the whole contract. So the New Jersey Crest v. La Villa case, it says the whole contract, void, null, unenforceable. You can't say, well, all these terms are void and unenforceable, but we're going to keep this one right here. So if he didn't have contract to enter into the whole contract, the whole contract is unenforceable. That would include those two clauses. And I think that's just common sense. But like I said, the law also supports it. Crest v. La Villa says it's as if there's no contract at all. And the Bonham, Texas case said anything the mayor did is of no effect whatsoever. And then, of course, my favorite is just the insaneness that a private company can contract around state laws. So I put in my brief the marijuana example. If I want to open a marijuana dispensary here in Houston, can I buy marijuana from Colorado where it's legal and put in my contract that Colorado laws will apply? And then can I come down here and open a big shop and start selling marijuana? Of course not. I'm going to be arrested. The laws of the state govern. And EHRA traveled to New Jersey to do this business. They enter the contract in New Jersey. But they want these Texas laws that allegedly contradict New Jersey laws to apply. And that's just ludicrous. And then, of course, if the Texas Forum Selection Clause is allowed to govern, it would make the contract illegal, and illegal contracts aren't enforceable in any district. They talked about testimony from Downs' witnesses. And the final point, Your Honor, excuse me, on the Forum Selection Clause, Texas law is the same as New Jersey on this issue. I cited eight Texas cases that said a mayor cannot enter into a contract without city council committee approval. So even if this court chooses Texas law applies, this contract is still dead on arrival. And then, of course, the testimony from Downs' witnesses, with all due respect to opposing counsel, we strongly disagree. The township members did not testify they agreed to this contract. They testified they had nothing to do with this contract. They didn't know anything about this contract. They had never even seen this contract. And the mayor testified consistently throughout the case, including through meeting minutes, that he did this on his own. And they also asked if there was a, if the power could be delegated to the mayor through some sort of FEMA appointment or anything like that. And on page 35 of our brief, Your Honor, we have the Crestby-LaVilla case where it says, any exercise of delegated power by a municipality in a manner not within the purview of the governing statutes is capricious and ultra-virus of the delegated power. We also have a Texas case that says the city's governing body may not delegate the right to make decisions affecting the transaction of city business. And just in closing, Your Honor, I ask that you please remember the 1,200 taxpaying citizens. All right. We'll remember both sides in the case, and thanks to both sides for a good argument. The case is submitted, and the court is in recess until 9 a.m. tomorrow.